UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 3:23-CR-062-CHB-01, 02 |
| ) | |
| v. ) | |
| ) | |
| BENJAMIN MARTINEZ (01), ) | |
| RODOLFO REYES MARTINEZ (02), ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |
| ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on several related motions. Defendant Rodolfo Reyes Martinez (hereafter, "Rodolfo") has filed a Motion for Additional Information Regarding Government Witness, [R. 84], and a Motion to Suppress, [R. 87], which Defendant Benjamin Martinez (hereafter, "Benjamin") asks to join. [R. 91]. Benjamin has filed a Motion to Compel Witness Information, [R. 85], which Rodolfo seeks to join. [R. 88].[1] The United States has responded, [R. 99; R. 100], and Rodolfo filed a reply regarding his Motion to Suppress. [R. 103]. Benjamin did not file a reply. For the reasons set forth below, the Court will grant each defendant's request to join the other's motion, but will deny the Motion for Additional Information Regarding Government Witness, [R. 84], the Motion to Suppress, [R. 87], and the Motion to Compel Witness Information, [R. 85].

**I.    BACKGROUND**

On December 15, 2022, Louisville Metro Police Department ("LMPD") Detective Matthew Chaudoin was advised that the United States Marshals Service had detained three

---

[1] The United States has not expressed any objection to the defendants' requests to join, and the Court will grant those motions.

1

individuals at 13302 Vendetta Way in Louisville, Kentucky. [R. 95-1, p. 3 (Redacted Search Warrant Affidavit)]. Detective Chaudoin responded to the Vendetta way address and discussed the case with another LMPD detective, who had been briefed by the Marshals and "Task Force Officers," and who relayed that information to Detective Chaudoin. *Id.* That LMPD detective advised that the Marshals had arrived at the address for the purpose of serving a federal arrest warrant on Rodolfo, for "Possession of a Machine Gun." *Id.* The Marshals learned that Rodolfo was in the company of Benjamin, and they observed Benjamin and a third individual, Witness 1, in a vehicle parked outside of the Vendetta Way apartment. *Id.* When the Marshals approached the vehicle, they observed Benajmin "attempting to hide a handgun under the driver's seat" of the vehicle. *Id.* They then observed Rodolfo emerging from the apartment and into the garage, which was open, and then attempting to "flee back into" the apartment before being detained by the Marshals. *Id.* at 3–4. "An amount of suspected methamphetamine" was found on Rodolfo's person. *Id.* at 4.

Benjamin and Witness 1 were found in possession of approximately $15,000 in United States currency, and Witness 1 indicated that she and Benjamin "were headed to Chicago to purchase a vehicle." *Id.* Witness 1 also advised officers that she "slept in the apartment on the couch last night and that both Benjamin and Rodolfo Martinez slept in the apartment as well." *Id.* She also told officers that she had observed white powder and a long gun (either a rifle or shotgun) inside the apartment, and that those items were currently located there. *Id.*

Meanwhile, inquiries into Benjamin and Rodolfo's criminal histories revealed that Benjamin had multiple prior convictions for Trafficking in a Controlled Substance and multiple weapons convictions. *Id.* Rodolfo similarly had "prior charges for drug trafficking offenses as well as weapons violations," and it was revealed that, "during every or nearly every prior

contact" that Rodolfo had with law enforcement, he had been armed with a firearm, including a machine gun on at least two occasions. *Id.*

Detective Chaudoin provided this information in a search warrant and accompanying affidavit for the Vendetta Way apartment, which was approved and executed. *See generally* [R. 95-1]. Benjamin and Rodolfo were ultimately charged with one count of possession with intent to distribute (Count 1) and one count of possession of a firearm in furtherance of drug trafficking (Count 2). [R. 48 (Superseding Indictment)]. Each defendant was also charged with possession of a firearm by a prohibited person (Counts 3 and 4). *Id.*

On June 12, 2025, shortly before the pretrial conference in this case, counsel for Rodolfo filed a Motion for Additional Information Regarding Government Witness, requesting "[a]dditional information regarding [Witness 1's] involvement with law enforcement and with this case" and noting that "a potential suppression issue may need to be re-visited." [R. 84]. As noted in the motion, this issue arose when the United States advised defense counsel on June 11, 2025 that "a key witness, [Witness 1], who was present at the arrest and was quoted substantially in the search warrant in this matter, is a government informant." *Id.*

The Court discussed counsel's request at the June 12, 2025 pretrial conference and allowed any related motions by defense counsel to be filed on or before the close of business on Friday, June 13, 2025. [R. 89]. Counsel for Benjamin then filed a Motion to Compel Witness Information, seeking access to the witness's confidential informant file, which Rodolfo joins. [R. 85]; [R. 88]. The United States responded, [R. 99]. Neither defendant filed a reply regarding the motion to compel.

Counsel for Rodolfo also filed a Motion to Suppress, which the Court understands to be a request for a *Franks* hearing, and which Defendant Benjamin Martinez joins. [R. 87]; [R. 88]. In

3

support of that request, counsel states, "LMPD knew, when they drafted the search warrant Affidavit in this case, that Witness 1 was a paid informant for LMPD, knew of her motivations for providing potential information, knew that this raised potential concerns with her credibility, and decided to hide this information from the magistrate," and as a result, "law enforcement knowingly or intentionally omitted material information from the [search warrant] affidavit." [R. 87, p. 2]. The United States responded, [R. 100], and Rodolfo filed a reply regarding his Motion to Suppress. [R. 103]. Benjamin did not file a reply.

Accordingly, these motions are ripe for review. The Court rules on each in turn.

## II. ANALYSIS

### A. Motion for Additional Information Regarding Government Witness, [R. 84], and Motion to Compel Witness Information, [R. 85]

The Motion for Additional Information Regarding Government Witness seeks "[a]dditional information regarding [Witness 1's] involvement with law enforcement and with this case." [R. 84]. As explained at the pretrial conference, defense counsel is primarily concerned with Witness 1's role as a confidential informant. The Motion to Compel Witness Information mirrors these concerns and requests that Witness 1's confidential informant file be turned over to defense counsel. [R. 85]. Defense counsel also seeks Witness 1's "history," and, "[s]hould the [] file not contain instances where Witness 1 avoided criminal charges based on her work," then defense counsel also asks "that each of these instances be disclosed as well," including "dates, times, locations, and all of the circumstances surrounding the potential charges Witness 1 avoided prosecution [of] because of her status, work, and/or agreement to be an informant." *Id.* at 1–2.

The Court ordered the United States to provide certain information in its response, including, among other things, details about what information had already been disclosed, what

type of favorable treatment, if any, the witness had received for her assistance this case, and whether all *Brady* and *Giglio* materials in the file had already been turned over to defense counsel. [R. 96]. In its response, the United States explains that it had disclosed to defense counsel that "Witness 1 previously acted as a confidential informant, that she was not acting in her capacity as a confidential informant in the instant offense, but that she had acted as an informant both prior to and after December 15, 2022," and that "Witness 1 had made controlled purchases for law enforcement." [R. 99, p. 2]. The United States further provided to defense counsel specific amounts Witness 1 was paid in the years 2019, 2020, 2022, and 2023 for her work as an informant on other unrelated cases. *Id.* The United States also again confirms that the witness was not acting as a confidential information in *this* case, and she received "no favorable treatment (monetary, charging consideration, or otherwise) for her assistance in *this* case." *Id.* at 2, 5 (emphasis added).

The United States goes on to argue that the defendants were not entitled to the entire confidential informant file; the witness's criminal history had already been disclosed to defense counsel; and any favorable treatment that Witness 1 received in unrelated cases is not discoverable. The United States also reiterates that it has "provided a summary of all *Brady* and *Giglio* materials contained within [Witness 1's] files to counsel." *Id.* at 5. Regardless, the United States represents that "it no longer intends to present Witness 1 as a witness at trial," thereby rendering moot the pending motions. *Id.* at 1, 5.

Neither defense counsel filed a reply. The Court understands from their lack of objection that they do not dispute that these motions, [R. 84], [R. 85], are now moot. The Court will therefore deny both motions as moot. To be clear, however, the Court is not aware of any authority—and defense counsel do not cite any authority—that would entitle defendants to the

5

full confidential informant file, including information relating to all other investigations in which the witness was an informant. *See generally United States v. Hogg*, No. 13-CR-20809, 2014 WL 1328170 (E.D. Mich. Apr. 2, 2014); *United States v. Gaines*, No. 3:09CR22, 2009 WL 2849733 (M.D. Tenn. Sept. 2, 2009); *United States v. Bararia*, No. 2:12-CR-236-APG-GWF, 2013 WL 3353343 (D. Nev. July 2, 2013). And to the extent the United States *does* have an obligation to disclose certain information within that file, namely, *Brady* or *Giglio* materials, it represents that it has already disclosed such information.[2] [R. 99, p. 5].

### B. Motion to Suppress, [R. 87]

As an initial matter, the Court notes that this motion is untimely. *See* [R. 13; R. 16]. However, defense counsel represents that he only became aware of Witness 1's informant status shortly before the June 12, 2025 pretrial conference. [R. 87, p. 1]. The United States does not dispute this timeline, nor does it challenge the timeliness of the motion. The Court will therefore consider the motion.

Turning to the motion, defense counsel argues that "[t]he only thing tying the residence to drug trafficking in the affidavit is the statement by Witness 1 that white powder and a gun inside (sic) were currently inside residence (sic)." *Id.* at 2. However, he argues, the magistrate judge was not informed of Witness 1's informant status "and that she was motivated to provide a reason for a search of the residence, to further her relationship with LMPD, since she had been paid for providing information in the past." *Id.* As noted above, counsel also asserts that "LMPD knew, when they drafted the search warrant Affidavit in this case, that Witness 1 was a paid informant for LMPD, knew of her motivations for providing potential information, knew that this raised potential concerns with her credibility, and decided to hide this information from the magistrate," and as a result, "law enforcement knowingly or intentionally omitted material

---

[2] The Court also understands that the United States will disclose all Jencks Act materials prior to trial.

information from the [search warrant] affidavit." *Id.* As a result, he requests a *Franks* hearing to challenge the validity of the search warrant.[3] *Id.*

The Court ordered the United States to provide certain information in its response, including, among other things, whether the search warrant affiant knew of the witness's informant status when he swore out the affidavit, and if so, to what extent the affiant was familiar with the witness's reputation as an informant (i.e., whether the witness was reliable, or had a reputation for dishonesty in the witness's work as an informant). [R. 96]. In response, the United States explains that the affiant, Detective Chaudoin, was unaware of Witness 1's informant status when he swore out the affidavit, and he was unaware of her reliability or credibility. [R. 100, p. 3]. The United States also argues that the defendants have failed to meet the high burden required to obtain a *Franks* hearing, and even without Witness 1's statements, probable cause existed. *Id.* at 3–9.

In reply, defense counsel for Rodolfo insists that "[i]t is exceedingly unlikely that the information sharing that occurred as soon as [Detective] Chadouin arrived on scene did not include information from the task force that one of the people apprehended in the truck, with $7,000 on her person, was an informant known to the task force." [R. 103, p. 1]. He also questions Witness 1's bias and motivation for working with law enforcement in this case, given that, in other cases, she received monetary compensation, and drug charges were also withheld. *Id.* at 2. Lastly, he argues that, without Witness 1's statements, the warrant lacked probable cause. *Id.* at 2–4.

---

[3] Defense counsel also suggests that the search warrant was too broad. [R. 87, p. 1]. However, he does not expand on that argument, nor seek any relief related to that argument. And regardless, any suppression motion based on the alleged scope of the search warrant (which was disclosed to Rodolfo's counsel on April 10, 2024, [R. 100, p. 2]) rather than newly disclosed information, would be extremely untimely. The same is true to the extent that defense counsel notes, without making any substantive argument, that the affidavit "mistakenly reported that Rodolfo's brother, Benjamin, had a warrant for his arrest as well, which was untrue." *Id.*

7

In addressing these arguments, the Court first considers whether the defendants have shown that they are entitled to a *Franks* hearing. "A *Franks* hearing is an evidentiary hearing during which defendants are allowed to present evidence concerning the veracity of the challenged statements in the search warrant affidavit." *United States v. Kelley*, 596 F. Supp. 2d 1132, 1149 (E.D. Tenn. 2009), *aff'd*, 459 F. App'x 527 (6th Cir. 2012) (citations omitted); *Franks v. Delaware*, 438 U.S. 154 (1978). However, search warrant affidavits are entitled to a presumption of validity. *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2009) (citation omitted). Thus, a defendant challenging an affidavit in support of a search warrant "bears a heavy burden." *See May-Shaw v. United States*, No. 1:22-cv-479, 2024 WL 4143024, at *7 (W.D. Mich. Sept. 11, 2024).

To be entitled to a *Franks* hearing to challenge the veracity of the statements in such an affidavit, the defendant must

> 1) make[] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) prove[] that the false statement or material omission is necessary to the probable cause finding in the affidavit.

*Id.* (alterations in original) (quoting *United States v. Young*, 847 F.3d 328, 348–49 (6th Cir. 2017)). An officer's statement is made with reckless disregard for the truth only if the defendant can show that the officer "subjectively entertain[ed] serious doubts as to the truth of his [or her] allegations." *Id.* (alterations in original) (internal quotations and citations omitted).

When it comes to omissions, a defendant's burden is even higher. *See Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998); *see also United States v. Hampton*, 760 F. App'x 399, 404 (6th Cir. 2019). "When there is a material omission of fact, a *Franks* hearing is granted only if the defendant 'makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the

8

finding of probable cause.'" *Hampton*, 760 F. App'x at 404 (emphasis in original) (quoting *Mays*, 134 F.3d at 816). The justification for this heightened standard is well-founded: allowing every omission to warrant a *Franks* hearing would allow every affidavit ever submitted to be questioned. *Mays*, 134 F.3d at 815 (citation omitted). Indeed, the Sixth Circuit has made clear that while omissions are not immune from a *Franks* inquiry, they are "much less likely to merit a *Franks* hearing than are affidavits including allegedly false statements." *Id.* (citing *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)). Thus, while "[a] *Franks* hearing may be merited when facts have been omitted in a warrant application," this occurs "only in rare instances." *Id.*

Finally, for both false statements and material omissions, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no [*Franks*] hearing is required." *Bateman*, 945 F.3d at 1008 (cleaned up) (quoting *Franks*, 438 U.S. at 171–72).

Here, defense counsel asserts that the search warrant affiant excluded critical information from the affidavit. *See, e.g.* [R. 87]. In other words, defense counsel primarily seeks a *Franks* hearing based on a material omission. The Court will therefore consider (1) whether defense counsel has made a substantial preliminary showing that the affiant, with an intention to mislead, excluded critical information from the affidavit and (2) whether that omission, if any, was necessary to the probable cause finding.

### 1. Material Omission

As noted above, there exists "a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks*, 438 U.S. at 171. The Supreme Court has explained that, in light of this presumption, a defendant seeking a *Franks* hearing must present more than

9

conclusory attacks, and his challenge to the search warrant affidavit "must be supported by more than a mere desire to cross-examine." *Id.* More specifically,

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, *and those allegations must be accompanied by an offer of proof*. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. *Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained*. Allegations of negligence or innocent mistake are insufficient.

*Id.* (emphasis added).

In the present case, defense counsel alleges in his motion that Detective Chaudoin "knew of [Witness 1's] motivations for providing potential information, knew that this raised potential concerns with her credibility, and decided to hide this information from the magistrate." [R. 87, p. 2]. In his reply brief, he again suggests that Detective Chaudoin knew of Witness 1's informant status. [R. 103, p. 1 ("It is exceedingly unlikely that the information sharing that occurred as soon as Det. Chadouin arrived on scene did not include information from the task force that one of the people apprehended in the truck, with $7,000 on her person, was an informant known to the task force.")].[4] However, defense counsel offers no proof whatsoever to support these assertions. He attaches no affidavits or reliable statements of witnesses, nor any other form of proof to support his highly speculative and conclusory statements.

Moreover, the United States has proffered in its response brief that the search warrant affiant, Detective Chaudoin,

> would testify that he was not aware of Witness 1's informant status at the time he drafted and submitted the search warrant. Furthermore, if Det. Chaudoin knew Witness 1 had been an informant, he would not have omitted that information from the search warrant affidavit. Det. Chaudoin does not recall precisely when he learned that Witness 1 had been an informant.

---

[4] Defense counsel appears to assume that the "Task Force Officers" referenced in the search warrant affidavit were involved in the other cases in which Witness 1 was an informant and therefore knew she was an informant. There is no evidence of this, however.

[R. 100, p. 3]. The United States further proffers that Detective Chaudoin "did not know Witness 1's status an (sic) informant and was unaware of Witness 1's reliability or credibility." *Id.* Because Detective Chaudoin did not know of Witness 1's informant status, or her reputation as reliable or credible (or not), he could not have omitted such information with an intent to mislead the magistrate judge.

The Court also notes that, even if Detective Chaudoin *did* know of Witness 1's informant status and intentionally omitted that fact from his search warrant affidavit, such information, without more, is not necessarily material. From the best the Court can tell, defense counsel argues that Witness 1's mere status as an informant on other *unrelated* cases calls into question her credibility and her motivations for speaking to law enforcement in *this* case. [R. 103, pp. 1–2]. He cites no authority, and the Court has found none, suggesting that the failure to identify a witness as an informant in unrelated cases, without more, is a *material* omission.

True, if an affiant intentionally omitted the fact that a witness was an informant with a reputation for lying to law enforcement, that information might call into question the reliability and credibility of that witness's statements. And that, in turn, *might* have a material impact on the magistrate judge's probable cause finding. *See United States v. Shaffer*, 238 F. Supp. 3d 913, at 921–22 (E.D. Ky. 2017) (noting that not all omissions regarding an informant's credibility are misleading enough to be deemed a falsehood under *Franks*); *United States v. Neal*, No. 13-5875, 2012 WL 2154271, at *8 (E.D. Tenn. June 12, 2012) (finding that the omission from an affidavit that a law enforcement officer had expressed skepticism regarding the veracity of the confidential information was *not* material to the magistrate judge's finding of probable cause), *affirmed on other grounds in United States v. Neal*, 577 F. App'x 434 (6th Cir 2014). In the present case, however, there is no evidence that Witness 1—who again, was not an informant in

11

this case—had a reputation for dishonesty, as an informant or otherwise. Instead, the United States has proffered that "all evidence indicates that Witness 1 would have been described as credible and reliable." [R. 100, p. 5]. Moreover, the mere fact that she has a criminal history or may have been engaged in criminal behavior, without more, does not necessarily render her statements incredible. *See United State v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008); *Shaffer*, 238 F. Supp. 3d at 922.

In sum, the defendants have failed to establish their burden of making "'a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause.'" *Hampton*, 760 F. App'x at 404 (emphasis in original) (quoting *Mays*, 134 F.3d at 816). As such, they have failed to satisfy their burden under *Franks*.[5]

**2. Probable Cause**

Even if the defendants made a substantial showing that the affiant, with an intention to mislead, excluded critical information from the affidavit, they would still need to demonstrate that the omission was necessary to the magistrate judge's probable cause finding. *See Franks*, 438 U.S. at 171–72 ("Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.").

---

[5] Defense counsel notes in his reply brief that Rodolfo had prior *convictions* only for marijuana possession, while the affidavit states that he had prior *charges* for drug trafficking offenses. [R. 103, pp. 3–4]. While defense counsel does not challenge the truth of the affiant's statement that Rodolfo had been *charged* with such offenses, the Court notes that any such attack on the search warrant would be untimely. The same is true of defense counsel's assertion in his reply brief that the affidavit "provides the false information that there was an arrest warrant for B. Martinez." *Id.* at 2. Indeed, the search warrant was disclosed to Rodolfo's counsel on April 10, 2024, [R. 100, p. 2]. and the deadline for filing motions to suppress (or for a *Franks* hearing) has long since passed. [R. 13, R. 16]. Regardless, even if the Court were to consider these arguments, it would find that the defendants have failed to satisfy their burden of making "a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit." *May-Shaw*, 2024 WL 4143024, at *7.

In this case, however, the warrant affidavit established probable cause to search the Vendetta Way residence, even in the absence of Witness 1's statements.

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)) (internal quotation marks omitted). On this point, the Supreme Court has explained that, so long as the magistrate judge had a "substantial basis for . . . concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* (quoting *Gates*, 462 U.S. at 236) (cleaned up). More specifically, the magistrate judge "must find that 'given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Gates*, 462 U.S. at 236). In other words, "the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016).

To meet this nexus requirement, "the circumstances must indicate why evidence of illegal activity will be found in a particular place." *Id.* (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)) (internal quotation marks omitted). The affidavit must indicate "that there is reasonable cause to believe that the specific thing to be searched is located on the property to which entry is sought, and not merely that the owner of the property is suspected of a crime." *Id.* (quoting *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006)) (cleaned up).

For example, in *Berry*, officers were investigating a drug operation when they received a tip that the defendant, Berry, was living in the same duplex as the subject of their investigation,

13

who was a known drug dealer. *Id.* at 335–36. The officers were familiar with Berry's criminal history, including a drug trafficking conviction, and his status as a probationer. *Id.* at 335. Berry's status as a probationer required him to notify his probation officer of this most recent address change, something he had not done. *Id.* Officers eventually arrested Berry in the driveway of the duplex and searched his vehicle incident to the arrest. *Id.* In the car, they found cocaine. *Id.* Officers then obtained a search warrant for the duplex, which allowed them to search for evidence of drugs and evidence establishing that Berry lived at the property in violation of his terms of probation. *Id.* at 335–37. After both drugs and guns were found in the home, Berry was charged with several drug trafficking and firearms charges. *Id.* at 337.

Berry filed a motion to suppress, arguing that the search warrant affidavit failed to establish the requisite nexus between the duplex and the drug activity. *Id.* The district court denied the motion. *Id.* On appeal, the Sixth Circuit affirmed, explaining,

> Although a defendant's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in defendant's home, there is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home.

*Id.* at 339 (internal citations omitted). In Berry's case, the warrant established probable cause, as it specified that Berry was known to be involved in drug trafficking based on a prior conviction and officers discovered crack cocaine in his car during the search incident to arrest. *Id.* It also noted that he had been renting the duplex under an alias and paid his rent in cash, facts that the officers had uncovered during the course of their investigation. *Id.* And finally, the affiant-officer stated that based on his experience, vehicles "parked on the premise of the places where controlled substances are found or sold oftentimes contain controlled substances." *Id.* (quoting the affidavit). The Sixth Circuit therefore concluded that "[c]ertainly, the affidavit established 'a

14

fair probability that contraband or evidence of a [drug] crime' would be found at" the duplex. *Id.* (quoting *Gates*, 462 U.S. at 238).

On the other hand, the Sixth Circuit has found that a search warrant affidavit lacked probable cause where it "did nothing more than state where [the] defendant resided and that [the] defendant was arrested for a non-drug offense with a quantity of crack cocaine on his person." *Id.* at 338–39 (discussing *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006)). In that case, *McPhearson*, the defendant had been arrested on an outstanding warrant for simple assault and was not known to be involved in drug trafficking. *See McPhearson*, 469 F.3d at 524–25. And the Sixth Circuit has since clarified that, even if the defendant is a known drug dealer, the affidavit may still lack probable cause if it "fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable." *Brown*, 828 F.3d at 384. Thus, in the *Brown* case cited by defense counsel, the search warrant affidavit lacked probable cause where it "contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there." 828 F.3d at 382.[6]

The present case falls somewhere between *Berry*—which involved a known drug dealer who was found with cocaine outside his home—and the *McPhearson* and *Brown* cases, where the defendants were not known drug dealers (or the evidence establishing their status as drug dealers was weak), and the connection between drug trafficking and their residences was insufficient. Here, defense counsel insists in his reply brief that Rodolfo was not a known drug dealer and had prior convictions only for marijuana possession. [R. 103, pp. 3–4]. Defense counsel provides no proof to support this contention. Regardless, the search warrant affidavit

---

[6] In *Brown*, the Court also noted that there was insufficient evidence to establish Brown's status as a known drug dealer. *Brown*, 828 F.3d at 384.

15

does not state that Rodolfo had prior drug trafficking *convictions* and instead states that Rodolfo had "prior *charges* for drug trafficking offenses as well as weapon violations." [R. 95-1, p. 4 (emphasis added)].

Thus, while the affidavit establishes that Rodolfo had previously been suspected of drug trafficking, it does not establish that he was a convicted drug dealer. Nevertheless, the other facts cited in the affidavit are sufficient to establish probable cause, even without the benefit of Witness 1's statements. To summarize: the Marshals had just detained three individuals at the residence during the course of their investigation into Rodolfo, a known federal fugitive with a warrant for possession of a machine gun; one of the three individuals (Benjamin) was a convicted felon with a criminal history of drug-trafficking and weapons convictions, and another individual (Rodolfo) was a convicted felon with a history of drug-trafficking and weapons charges, and an outstanding federal arrest warrant for possession of a machine gun; the Marshals' investigation revealed that Rodolfo was in the company of Benjamin; Benjamin, the known drug-dealer, and Witness 1 were parked just outside of the apartment's garage, the door of which was open and attached to the apartment; Benjamin was observed attempting to hide a handgun in his vehicle, and was found with a large quantity of United States currency; Rodolfo exited the apartment and, upon seeing law enforcement, attempted to flee back into the apartment; a search of Rodolfo's person revealed an amount of suspected methamphetamine; Rodolfo was known by law enforcement to carry firearms, including a machine gun on at least two occasions. *Id.* at 3–5.

Based on these facts, as stated in the affidavit, there was probable cause to believe that the Vendetta Way apartment contained evidence of drug trafficking and illegal firearms. The affidavit establishes that Rodolfo, a convicted felon with a history of drug-trafficking and

16

weapons charges and a history of possessing illegal firearms, was in the company of Benjamin, a known drug-dealer and convicted felon who was found with a firearm and a substantial amount of cash near the open garage of the Vendetta Way apartment. *Id.* Rodolfo then exited the apartment into that open garage, attempted to flee back into the apartment, and was ultimately detained and searched, with methamphetamine found on his person. Under the totality of these circumstances, the Court cannot find that the affidavit lacked probable cause, even without the addition of Witness 1's statements.

Notably, even if the Court were to find that the defendants had satisfied their burden of demonstrating a material omission and that the affidavit lacked probable cause to search the residence for evidence of *drug trafficking*, the Court could not find that, based on the totality of the circumstances already stated, that the affidavit lacked probable cause to search the residence for evidence of *firearms possession*. As already noted, Rodolfo had a federal arrest warrant for possession of a machine gun; had a history of charges for "weapons violations"; had been armed with a firearm "during every or nearly every prior contact" with law enforcement, including at least two occasions in which he was observed with a machine gun; was in the company of Benjamin, who had a history of drug trafficking and weapons conviction and was found in possession of (and attempting to conceal) a firearm and a large sum of cash; and attempted to flee *inside the apartment* when he saw law enforcement. [R. 95-1]. And had the search warrant issued for only evidence of firearms possession, it is clear that the officers would have discovered the drug-related evidence during that search. For example, the United States has indicated in its pretrial memorandum that drugs were found in Rodolfo and Benjamin's bedrooms, [R. 73, p. 4], and the United States further clarified at the pretrial conference that firearms were also found in those bedrooms. In that case, the doctrine of inevitable discovery, an

17

exception to the exclusionary rule, would apply, and the evidence would ultimately not be suppressed. *See United States v. Whitherspoon*, 1:09-CR-000410-TBR, 2010 WL 724663, at *5 (W.D. Ky. Feb. 25, 2010) ("The doctrine of inevitable discovery is an exception to the exclusionary rule which allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." (quoting *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (cleaned up))).

Regardless, however, the Court finds that there was probable cause to believe that the Vendetta Way apartment contained evidence of drug trafficking and illegal firearms. The Court therefore finds that, even if the defendants had satisfied their burden of making a substantial showing that the affiant, with an intention to mislead, excluded critical information from the affidavit (or otherwise knowingly and intentionally, or with reckless disregard for the truth, made false statements in the affidavit), they failed to demonstrate that the omission (or false statement) was necessary to the magistrate judge's probable cause finding. As such, they are not entitled to a *Franks* hearing, and the motion will be denied.

### III.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1. The Motion for Additional Information Regarding Government Witness, [**R. 84**], is **DENIED as moot**.

2. The Motion to Compel Witness Information, [**R. 85**], is **DENIED as moot**.

3. The Motion to Suppress, [**R. 87**], is **DENIED**.

4. Defendant Rodolfo Reyes Martinez's Motion to Join Co-Defendant's Motion to Compel Production of Witness File, [**R. 88**], is **GRANTED**.

5. Defendant Benjamin Martinez's Motion to Join Codefendant's Motion to Suppress, [**R. 91**], is **GRANTED**.

This the 20th day of June, 2025.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:   Counsel of Record